**In re COMMERCE CENTER, INC., Debtor.**

**SOUTHTRUST BANK OF ETOWAH COUNTY, Successor to First National Bank of Etowah County, a National Banking Association, Plaintiff,**

**v.**

**COMMERCE CENTER, INC., Defendant.**

**Bankruptcy No. 82–07051.**

**Adv. No. 82–1513.**

United States Bankruptcy Court, N.D. Alabama.

Feb. 18, 1983.

James S. Sledge, Gadsden, Ala., for plaintiff.

Charles Denaburg, Birmingham, Ala., for defendant.

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Introduction —*

The above-styled case was commenced by a voluntary petition filed November 29, 1982, under Chapter 11, Title 11, United States Code, and this case is still pending before this Court under said chapter. No trustee has been appointed. The above-styled adversary proceeding was filed in this case on December 10, 1982; whereby, the plaintiff seeks relief from the stay provided for by 11 U.S.C. § 362(a). The plaintiff seeks this relief in order to be able to proceed with the foreclosure of a mortgage which the defendant concedes covers a large tract of the defendant's real property, given by the defendant to the plaintiff as security for the debt owed by it to the plaintiff. On January 5, 1983, the plaintiff filed herein a waiver of the time constraints which, otherwise, would control the Court's disposition of this type of proceeding, and a hearing on this matter was continued once at the request of the plaintiff and once because of a conflicting obligation of the Court.

On February 16, 1983, this proceeding came before the Court for a hearing at Gadsden, Alabama; whereupon, it was tried to a conclusion before the bankruptcy judge, without the intervention of a jury.

*Findings of Fact —*

From the Court's having taken judicial knowledge of the debtor's schedules which were required to be filed with its petition, from the uncontradicted statements of counsel during the discussion of "adequate protection" had in open court, and from the evidence presented, the bankruptcy judge finds as follows:

1. The debtor is a corporation which has the principal place of business and its business activities at or near Gadsden, Alabama.

2. The debtor's principal asset is a tract of land consisting or approximately 312 acres, and its principal business activity is a real estate development on this property. Some comparatively small parts of the property in the debtor's real estate development have been sold by it or have been condemned for highway or other purposes, leaving the 312 acres.

3. The plaintiff holds a mortgage from the debtor on the real property as security for the debtor's payment to it of a loan indebtedness of approximately $465,000.00. The mortgage note is in default by virtue of the failure by the debtor to pay an interest installment of approximately $17,000.00 which was due in October, 1982. Similar interest payments fall due at the end of each quarter thereafter, with the entire principal debt maturing in August, 1983. The plaintiff's mortgage constitutes a first mortgage as to approximately 75 acres and a second mortgage as to the remaining part of the debtor's approximately 312 acre-tract.

4. The debtor is the recipient of a land-condemnation award which is now pending in the appellate courts of this State and has under contract proposed sales of relatively small parcels from the remaining 312 acres. When the debtor has in hand the proceeds from these matters, part must be applied to debts secured by other liens, and the remainder, which will go to the plaintiff, probably will approximate two-thirds of the October interest installment of about $17,000.00.

5. The plaintiff had the real property evaluated by an appraiser, who testified as an expert witness that the property had a value of about $3,500.00 per acre or a gross value of some $1,100,000.00 to $1,137,500.00. These figures contemplated an outright cash sale of the entire tract in its present condition. The witness testified that such a sale constituted the "highest and best use" of the property; however, his instructions from the plaintiff were to appraise the property "for a sale." This witness described the property as having a frontage along paved State Highway No. 77, as having water and sewerage facilities, as having certain paved streets constructed upon it, and as having electrical service available on

it. This witness expressed the opinion that an alleged cost figure to the debtor for the property of $1,400,000.00 was a reasonable figure.

6. The debtor's president testified that late in the year 1977 discussions were had and plans made for the development of the property in question and that the debtor purchased the property in the year 1978 pursuant to these development plans. These plans called for a twenty-year development program, whereby various portions of the tract of land would be committed to light industrial development, general distribution with warehouse facilities, a shopping mall, a restaurant, and other uses, all of which contemplate individual sales of relatively small parcels of the tract. In early 1981, these development plans were first discussed with the officials of the plaintiff bank. It may be inferred that the plaintiff then provided the financial resources for most of the development which thus far has occurred under those plans. The debtor's president testified that the "highest and best use" of the property was its development according to those plans, as portrayed in the debtor's brochure, which is debtor's Exhibit "4".

7. The purchase of the tract of land in the year 1978 was at a price of $600,000.00, and it is the vendors who now hold a "first" mortgage on a portion of the tract of land. The development which occurred after the plaintiff's involvement in the year 1981 cost about $600,000.00 and included the installation of the water system, the sewer system, the streets, and the electric-service facilities. The debtor has invested in excess of 1.4 million dollars in the project, but as indicated a small portion has been or will be recovered from the condemnation proceedings and past and contracted-for sales.

8. The debtor's president testified that the 75 acres against which the plaintiff has a "first" mortgage have a value of $750,-000.00, and that the entire tract has a value in excess of $3,000,000.00 for purposes of the development contemplated by the debtor's plan.

9. The debts owed by the debtor and secured by interest in part or all of the tract of real property and the extent and rank of the interest are approximately as set forth below:

| | |
|---|---|
| Vendors' mortgage—first lien or interest as to approximately 237 acres | $156,718. |
| Plaintiff's mortgage—first lien or interest as to 75 acres and second as to balance | 465,000. |
| Guaranty Realty Company—second lien or interest on 25 acres | 40,881. |
| Finkel Mortgage—second lien or interest on 25 acres | 22,158. |
| City of Gadsden—improvement assessments—rank and acreage not established | 399,417. |
| Accrued interest on last three debts | $ ? , |
| Total [plus accrued interest] | $1,084,174. |

NOTE: Some discrepancy exists in the rank and extent of these creditors' liens or interests.

10. Accrued, but undetermined interest mentioned in the preceding paragraph is probably not less than $50,000.00 and probably not more than $100,000.00.

11. The real property in question has a value in excess of the debts secured by interests of creditors in said property, giving the defendant an equity therein which the Court does not specifically determine at this time. The plaintiff's interest in the debtor's interest in said real property is adequately protected by such equity and the related circumstances for the present and at least for the next sixty days.

*Conclusions by the Court—*

Some light will be cast on the situation between these parties by affording the debtor an opportunity to file its plan of reorganization and attempt to obtain the proceeds from the land condemnation and the sales of land now under contract. Also, a reasonable delay in this proceeding will afford the debtor an opportunity to explore the possibility of abandoning its plans to develop this property and sell it to a purchaser who may have the financial resources available for whatever development may seem appropriate to the purchaser. Such a delay will not expose the plaintiff to any substantial financial harm, but the failure of the debtor to pay interest install-

ments to the plaintiff cannot be ignored as a ripening cause for lifting of the stay imposed pursuant to 11 U.S.C. § 362(a).

The bankruptcy judge concludes that relief to the plaintiff should be granted by way of conditioning the continuance in effect of the stay by a further and supplemental hearing on these matters to be held before this Court on March 30, 1983, and an appropriate order will be entered.